UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| In re:<br><br>    Eternal Enterprise, Inc.,<br><br>                      *Debtor.* | Case No.: 14-20292 (AMN)<br>Chapter 11<br><br>Re: ECF Nos. 709, 966, 967 |

### MEMORANDUM AND RULING CONFIRMING HARTFORD HOLDINGS, LLC′S SECOND MODIFIED FIFTH AMENDED CHAPTER 11 PLAN <u>BUT STAYING THE CONFIRMATION ORDER TO NOT LATER THAN JULY 31, 2017</u>

### **<u>Introduction</u>**

What is the value of the debtor's real property? The answer – and the key to the resolution of this three-year old chapter 11 case – is unknown with estimates varying between $14,240,000 and $4,360,000. When, as here, a plan is proposed that will divest an unwilling debtor of its ownership without an auction the bankruptcy court is required to value a chapter 11 estate's property to determine compliance with 11 U.S.C. § 1129(b)(1).

Any judicial determination of fair market value of real estate is, at most, a fixing of a hypothetical price "at which [the real estate] would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." *World Trade Center Props. LLC v. American Airlines, Inc. (In re September 11 Litig.)*, 802 F.3d 314, 335 (2d Cir. 2015) (*citing United States v. Cartwright*, 411 U.S. 546 (1973)). In light of the recognized subjectivity inherent in evaluating real estate, "courts have wide latitude in determining value." *In re Barbieri*, 2009 WL 5216963, Docket No. 00-22274-478, 2009 Bankr. LEXIS 4095, at *29

(Bankr. E.D.N.Y. Dec. 29, 2009).  "The Court is not bound by the experts' appraisals and may form its own opinion of a property's value." *Menorah Congregation & Religious Ctr. v. Feldman (In re Menorah Congregation & Religious Ctr.)*, 554 B.R. 675, 692 (Bankr. S.D.N.Y. 2016).

Here, a creditor proposes to take title to the debtor's real property and certain other assets constituting its collateral in satisfaction of the debtor's obligation on multiple notes and mortgages.  Having presented evidence that the real property is worth far less than its debt to support its claim that its plan is fair and equitable pursuant to 11 U.S.C. § 1129(b)(1), the creditor awaits the court's ruling on confirmation of its chapter 11 plan.  The debtor, in a change in strategy and somewhat late in the case, now presents two offers to purchase the property for a sum that would render the estate solvent leaving a surplus for equity.

In the interim between the creditor's proposal of the chapter 11 plan and the debtor's proposed sales, much has happened, including the mid-stream disbarment of debtor's counsel and the debtor's recent receipt of fire insurance proceeds totaling $3,000,000.  *See,* ECF No. 881.

For the reasons that follow, the court will confirm the plan with the condition that the debtor first be provided a period of time to sell the real property pursuant to further order of the court.

## Procedural History and the Nature of the Proceedings

The debtor here, Eternal Enterprise, LLC ("EE"), filed a voluntary chapter 11 bankruptcy proceeding in early 2014 with Peter Ressler representing the debtor as bankruptcy counsel.  Mr. Ressler resigned from the state and federal bars without leave

2

to reapply in March 2016. The debtor obtained the present chapter 11 counsel in April 2016. Additional, relevant procedural history is detailed in ECF No. 881, and was discussed with counsel for the debtor EE and with counsel for the largest creditor participating in the administration of this case, Hartford Holdings, LLC ("HH"), during a hearing held on February 15, 2017. Both counsel indicated substantial agreement with the procedural history recited in ECF No. 881. The court notes that no committee of unsecured creditors was appointed in this case; the secured creditor's claim is estimated at approximately $9,569,593.70[1]; and the unsecured creditor pool totals at most approximately $76,000. As a result, this case is best viewed as a two party dispute between EE and HH.

Presently pending before the court are three matters that are addressed in this Memorandum and Ruling: (1) HH's Second Modified Fifth Amended Chapter 11 Plan, ECF No. 709 (the "Plan"); (2) EE's objection to HH's proofs of claim, ECF No. 966[2]; and (3) EE's motion to sell real property pursuant to 11 U.S.C. § 363 (the "363 Motion"), ECF No. 967.[3]

---

[1] Hartford Holdings, LLC claims prepetition debt of $8,794,365.34 (Proofs of Claim 14-21, as amended) plus attorneys fees of approximately $644,500.00, ECF No. 930, plus reimbursement of advanced water and sewer payments of $130,728.40, ECF 944, 1:01:20-30, totaling approximately $9,569,593.70. This sum is exclusive of post-petition interest and the effect, if any, of post-petition adequate protection payments.

[2] While EE has acknowledged the perfection of HH's liens in numerous cash collateral orders, including in a proposed order filed by EE as recently as April 10, 2017 (ECF No. 993), EE nonetheless objected to the perfection of HH's liens on all of its cash and to the calculation of post-default interest, among other things. ECF No. 966. A hearing to consider the objection will be scheduled. The court assumes in this Memorandum and Ruling that HH's claim is valid and enforceable as EE has stipulated to these facts in numerous hearings and in several cash collateral orders submitted by both EE and HH jointly over the past three years. If HH's claim is disallowed in whole or in part the court will address at that time whether any modifications to this Memorandum and Ruling may be required.

[3] Counsel for EE and its shareholder Vera Mladen, Attorney Irene Costello and Attorney John Gale, respectively, repeatedly articulate surprise at the procedural requirements of the chapter 11 process and preface many statements by referring to what the judge supposedly told them to do or asking that the judge tell them what to do. This court considers it the responsibility of attorneys practicing before it to be familiar with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. For purposes of clarity, the court notes that while the 363 Motion and the objection to HH's claims will be scheduled for

**Various Estimates of Value and HH's Secured Claims**

According to the debtor EE, its Real Property[4] is now worth approximately $11,240,000 based on recent, contingent offers to purchase it. In addition, EE alleged that it now holds $3,000,000[5] of fire insurance proceeds relating to 270 Laurel Street, Hartford, Connecticut in an escrow account.[6] HH asserts liens on the Real Property, all accounts, proceeds, cash, receivables and the fire insurance proceeds ("HH's Collateral") to secure its claim of approximately $9,569,593.70. *See*, footnote 1. Based on these values, EE argues that HH's Collateral is worth substantially more than HH's claims if EE is able to sell the Real Property for $11,240,000. *See* Proofs of Claim 14 through 21, as amended; footnote 1.

If the Real Property is not sold through a § 363 sale, and HH's Plan is considered, there is vastly differing valuation information before the court. EE argued during a Confirmation Hearing (defined below) in early 2016 that the value of its real property was $9,800,000. On April 7, 2017, at the request of EE, the court approved a revised valuation of $6,681,040 for the Real Property with the City of Hartford for the 2015 Grand List (which EE argues is based on a 2011 City of Hartford revaluation). ECF No. 984. According to the City of Hartford's revaluation appraisals for its October 2016 Grand List, the Real

---

hearing, this scheduling by the court is in no way an assurance that the relief sought has been adequately noticed or that any procedural or substantive prerequisites to the entry of the relief being sought have been met.

[4] The debtor's real properties, as the "Real Property" is comprised of: 243-255 Laurel Street, 252 Laurel Street, 154-160A Collins Street, 21 Evergreen Avenue, 117-145 South Marshall Street, 56 Webster Street, 270 Laurel Street and 360 Laurel Street, all in Hartford, Connecticut.

[5] The court notes that a public adjuster is entitled to a commission of 10% on insurance proceeds pursuant to a prior order of the court, so the amount available to the debtor or the secured creditor is perhaps only $2,700,000. ECF No. 579. No application for allowance and payment of the commission has been filed by the debtor at this time.

[6] During a hearing held on April 5, 2017, the court directed counsel for the debtor to file information confirming the debtor's receipt of the $3,000,000 fire insurance proceeds and evidence of the balance of the escrow account. To date nothing has been filed.

4

Property is worth $8,872,500. And, according to HH's evidence presented during the Confirmation Hearing (defined below), the Real Property is worth a mere $4,360,000.[7] Some of the valuation estimates contemplate the $3,000,000 fire insurance proceeds; others do not.

### **The Confirmation Hearing**

A fully contested, evidentiary confirmation hearing – in effect a trial on the value of the EE Property – was held over three days in January and February 2016 (the "Confirmation Hearing"). Peter Ressler represented the debtor EE during the Confirmation Hearing. For many reasons, the ruling on the Plan has been delayed and familiarity is assumed with the procedural and factual history of this chapter 11 case as set forth in the court's Scheduling Order, ECF No. 881.[8]

During the Confirmation Hearing, both EE and HH presented evidence of the fair market values of the Real Property. HH met its burden to establish that the Plan was fair and equitable under §1129(b)(1) by presenting testimony from Norman Benedict,[9] a licensed real estate appraiser, and offered into evidence appraisal reports for the Real Property.[10] Norman Benedict's appraisals, taken cumulatively, provide a fair market value

---

[7] These figures oversimplify the valuation issue as each potential value has attendant costs that are described in more detail later in this Memorandum and Ruling. These differing figures illustrate, however, the vastly differing views of value presented by the debtor EE and the creditor HH. One consequence of EE's valuation, if it is correct, is that HH is entitled to postpetition interest, costs and attorneys fees relating to its allowed secured claims.

[8] *See, e.g.,* ECF No. 481. The court concludes that Mr. Ressler was acting under a conflict of interest during the Confirmation Hearing.

[9] Norman Benedict was originally retained by EE and conducted appraisals on EE's behalf in June 2015. EE relied upon the June 2015 appraisals in its Fourth Amended Disclosure Statement. See, Order Authorizing Employment, ECF No. 137 and Fourth Amended Disclosure Statement, p. 6, ECF No. 283.

[10] The appraisal reports were admitted as exhibits C (Appraisal of 21 Evergreen Avenue), D (Appraisal of 56 Webster Street), E (Appraisal of 115 South Marshall Street), F (Appraisal of 156 Collins Street), G (Appraisal of 243 and 255 Laurel Street), H (Appraisal of 252 Laurel Street) and I (Appraisal of 270 Laurel Street), and J (Appraisal of 360 Laurel Street).

5

of the Real Property, totaling $4,360,000.00.  See, Exhibits C-J.  Mr. Benedict's appraisals comported with well-established practices for valuing real estate for purposes of chapter 11 reorganization plans.  For example, each appraisal included comparison of the subject property to similar properties, replacement costs and capitalized income as bases for evaluation.  *See* Collier on Bankruptcy ¶ 1129.05[3][a][v].

In response, EE offered the testimony of Michael McDonald, PhD, an assistant professor of finance but Mr. McDonald's testimony failed to establish that the value of the Real Property would be sufficient to pay all allowed claims and leave a surplus for equity. Michael McDonald testified, as an expert in finance and business valuation, that it was his opinion that the Real Property should be valued, in the aggregate, closer to $9,800,000.00.  ECF No. 348 at 01:01:40-01:02:30.  Mr. McDonald's valuation approach did not follow well-established practices for valuing real estate when considering a chapter 11 plan and the court gives little weight to his opinion for this reason.

The debtor's two recent fires – one at 270 Laurel Street and one at 21 Evergreen Avenue – occurred after the Confirmation Hearing and so neither Mr. Benedict nor Mr. McDonald took the effect of the fires into account.

The court notes that in late 2015, represented by former attorney Peter Ressler, EE proposed a plan that was not confirmable because no impaired class voted in favor of the plan.  *See,* 11 U.S.C. § 1129(a)(10); ECF Nos. 343; 344.  Since April 2016, when debtor's present counsel first sought admission to represent EE, the debtor has failed to file a plan of reorganization and disclosure statement meeting the requirements of the Bankruptcy Code and Federal Rules of Procedure.

6

## The Proposed § 363 Sale

Instead of pursuing reorganization through a chapter 11 plan the debtor EE recently filed the 363 Motion seeking authority to sell portions of the debtor's Real Property to two different buyers as follows:

- **Offer One:  $9,240,000**

    - Aria Legacy Group, LLC proposes to purchase 243-255 Laurel Street, 252 Laurel Street, 154-160A Collins Street, 21 Evergreen Avenue, 117-145 South Marshall Street, and 56 Webster Street, Hartford, Connecticut (the "Offer One Property") for $9,240,000.

- **Offer Two: $2,000,000**

    - Onyx Investments, LLC proposes to purchase 270 Laurel Street and 360 Laurel Street, Hartford, Connecticut (the "Offer Two Property) for $2,000,000.

    - Offer Two excludes $3,000,000 of fire insurance proceeds the debtor alleges it holds relating to 270 Laurel Street.  This brings the value of Offer Two to $5,000,000, net of any commission allowed to a public insurance adjuster.

Neither Offer One or Offer Two is without contingencies.  It is presently unknown whether the proposed transactions, or any higher competing bid, if approved by the court after notice and a hearing, will close.

## Discussion

The Second Circuit has noted that, "[c]onfirmation of a plan over the vote of a dissenting class requires that the plan be 'fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted, the plan.' 11 U.S.C. § 1129(b)(1)." *Ahuja v. LightSquared Inc.*, 644 F. App'x 24, 29 (2d Cir. 2016), cert. denied sub nom. *Sanjiv Ahuja v. LightSquared Inc.*, 137 S. Ct. 335, 196 L. Ed. 2d 262 (2016). The fair and equitable requirement "protects the Equity as a dissenting class.  It's

7

undisputed that the 'fair and equitable' requirement encompasses a rule that a senior class cannot receive more than full compensation for its claims.  Courts will deny confirmation if a plan undervalues a debtor and therefore would have resulted in paying senior creditors more than full compensation for their allowed claims." *In re Chemtura Corp.*, 439 B.R. 561, 592 (Bankr. S.D.N.Y. 2010); *see also LightSquared Inc.* at 29 (concluding that bankruptcy court had properly valued the debtor, therefore senior creditors had not been overpaid).  "The reason for this rule is obvious, and goes back to the basic understanding between debt and equity.  Holders of debt traditionally contract for repayment of principal and interest, but no more; after that, the residual goes to equity. . . . This component of the fair and equitable rule will require valuation of the debtor in every case in which the plan proposes to eliminate equity or any junior class of creditors. Eliminated classes may then insist on compliance with the fair and equitable requirement, which will necessitate an evidentiary showing that there is insufficient reorganization value for the eliminated class after payment to the senior classes."  Collier on Bankruptcy, ¶ 1129.03 (16th ed. 2017).

To credit EE's estimate of value of approximately $14,240,000 in considering the application of 11 U.S.C. § 1129(b) to HH's Plan, the court must consider whether the purchase prices proposed in Offer One and Offer Two are indicative of an accurate value of the real estate.  If the Offers are never consummated, the proposed purchase prices are irrelevant.  The court recognizes that "[v]aluation outside the actual market place is inherently inexact."  *Wright v. Chase (In re Wright)*, 460 B.R. 581, 584 (Bankr. E.D.N.Y. 2011)(citing *Rushton v. Commissioner*, 498 F.2d 88, 95 (5th Cir. 1974)).

The parties are in rare agreement, through counsel, that a reasonable course in

this unusual case would be to provide a limited period of time for EE to seek court approval for the 363 Motion and then to attempt to consummate sales of all of the Property, followed by immediate consummation of HH's Plan if the sales effort is unsuccessful.[11]

The court notes that this is a single asset real estate case as defined in 11 U.S.C. § 101.  Pursuant to 11 U.S.C. § 362(d)(3), a single asset real estate debtor must file a plan that has a reasonable possibility of being confirmed within a reasonable time, or commence monthly adequate protection payments, within thirty (30) days after the petition date.  If it does not, the court must grant relief from stay if requested by a secured creditor.  The debtor commenced monthly adequate protection payments during the case, but the payments substantially ceased in July 2016 following the fire at 270 Laurel Street. The necessity of resolving single asset real estate cases in chapter 11 with celerity, embodied by Congress's enactment of § 362(d)(3) in 2005, provides further justification for the court's decision to proceed with the case on dual tracks thereby ensuring that either a § 363 sale or confirmation of the Plan occurs on or before July 31, 2017.

*Findings Regarding Valuation*

The court must value the Real Property in case there is no sale that can be consummated.  After carefully considering the sources of valuation information before it, including the Norman Benedict appraisals and testimony, testimony from Michael McDonald, municipal tax assessor valuations and the $3,000,000 fire insurance proceeds relating to the 270 Laurel Street property, the court finds that the municipal tax assessor

---

[11] During the April 5, 2017 hearing, HH's attorney conceded that it would be satisfied if sales of the Real Property resulted in $14,000,000 in combined sales and insurance proceeds in a timely manner. ECF No. 978, 00:58:25-00:58:40.  Also during the April 5, 2017 hearing, EE's attorney stated that a ninety-day stay of the effectiveness of the HH Plan would be sufficient.  ECF No. 978, 01:17:40-01:18:00.

9

valuations from the City of Hartford's 2016 revaluation are the most probative.

With regard to the evidence and testimony submitted during the Confirmation Hearing more than a year ago, the court finds that Norman Benedict and his appraisal reports provide a more credible estimation of fair market value based upon recognized valuation methodologies than the evidence and testimony provided by Michael McDonald. *See, See* Collier on Bankruptcy ¶ 1129.05[3][a][v]. However, the court notes that recent events including Offer Two and the City of Hartford's 2016 property revaluation appraisals indicated the weight to be given to Norman Benedict's appraised values must be tempered by subsequent events. For example, Offer Two proposes to purchase two properties – 270 Laurel Street and 360 Laurel Street – for $2,000,000 in as is condition, leaving the debtor EE with $3,000,000 of insurance proceeds, for a total value of $5,000,000 to EE, subject to HH's liens. According to Norman Benedict's appraisals, the value of these two buildings is just $1,200,000; according to the City of Hartford's 2016 appraisals the value is $2,530,000.[12] The court therefore concludes that the $4,360,000 valuation for all of the Real Property urged by HH during the Evidentiary Hearing, while based on more sound methodologies when compared to Mr. McDonald's economic analysis of a hypothetical market, is entitled to reduced weight based on these other factors.

The court has also considered matters of public record regarding EE's Real Property. The State of Connecticut provides guidelines for periodic revaluation of real property in a municipality in its general statutes, including Gen. Stat. § 12-63b(a). Regarding income producing property similar to EE's Real Property, section 12-63b(a)

---

[12] It is unknown whether the City of Hartford's 2016 valuation of 270 Laurel Street is based on its post-fire, pre-repair status.

10

provides that, "[t]he [tax] assessor or board of assessors in any town, at any time, when determining the present true and actual value of real property as provided in section 12-63, which property is used primarily for the purpose of producing rental income . . . shall determine such value on the basis of an appraisal which shall include to the extent applicable with respect to such property, consideration of each of the following methods of appraisal: (1) Replacement cost less depreciation, plus the market value of the land, (2) capitalization of net income based on market rent for similar property, and (3) a sales comparison approach based on current bona fide sales of comparable property." Conn. Gen. Stat. § 12-63b(a).  This three-pronged approach to valuation is identical to the generally accepted analysis for valuation of rental-producing real estate in the context of chapter 11 plans of reorganization.  *See* Collier on Bankruptcy ¶ 1129.05[3][a][v]. Moreover, the City of Hartford assessor undertook a city-wide revaluation within the past 12 months that was not performed in anticipation of litigation between the two parties here.

After careful consideration the court adopts the City of Hartford's 2016 valuation appraisals as the fair market value of the Real Property for purposes of confirmation of HH's Plan with the following values for each of the properties:

| Property Address | 2016 FMV City of Hartford Reevaluation[13] |
|---|---:|
| 21 Evergreen Avenue<br>Hartford, CT | $894,500.00 |
| 156 Collins Street<br>Hartford, CT | $703,200.00 |
| 160 Collins Street<br>Hartford, CT | $679,600.00 |
| 243 Laurel Street<br>Hartford, CT | $636,200.00 |
| 255 Laurel Street<br>Hartford, CT | $596,400.00 |

---

[13]    *See,* http://assessor1.hartford.gov/Default.asp?br=exp&yr=6

11

| | |
|---|---|
| 252 Laurel Street<br>Hartford, CT | $710,900.00 |
| 270 Laurel Street<br>Hartford, CT | $2,274,800.00 |
| 360 Laurel Street<br>Hartford, CT | $255,200.00 |
| *115 South Marshall Street*<br>*Hartford, CT* | *$1,626,000.00* |
| *56 Webster Street*<br>*Hartford, CT* | *$495,700.00* |
| ***TOTAL*** | ***$8,872,500.00*** |

Neither the evidence presented during the Confirmation Hearing nor the City of Hartford's 2016 valuation appraisals adopted as the fair market value by the court demonstrates with requisite certainty that there is enough value in the Real Property to provide a recovery to EE's equity holder. This is because even assuming the Real Property could be sold for the highest of the values before the court – EE's $9,800,000 estimate of value during the Confirmation Hearing – this sum would be insufficient to pay HH's claims totaling approximately $9,569,593.70, plus a capital gains tax[14], plus all allowed administrative and unsecured claims. Without such certainty, HH's Plan cannot be determined to violate 11 U.S.C. § 1129(b)(1) as EE urges[15] and should be confirmed.

The potential for greater recovery embodied by the Offers, however, requires the delayed confirmation of HH's Plan.

---

[14]   A capital gains tax would be potentially allowed as an administrative claim under 11 U.S.C. § 503(b). *See* ECF No. 934 and 938 (debtor's alleged basis in portions of Real Property); *see also,* HH's Plan, ECF No. 709, pp. 7-9. "In a non-individual [chapter 7 or 11] case, all of the assets and income become part of the bankruptcy estate and all taxes incurred during the administration of the case, except those treated as unsecured priority claims under section 507(a)(8), are treated as administrative expenses." Collier on Bankruptcy ¶ 503.07 (16th 2017).

[15]   The court notes that EE's arguments regarding 11 U.S.C. § 1129(b)(1) have not been clearly and directly made by counsel. First, while former attorney Mr. Ressler did seek to introduce appraisal evidence showing the value of the Real Property was higher than Mr. Benedict's appraised values, he did not clearly articulate an objection grounded in § 1129(b)(1). Similarly, Attorneys Costello (for EE) and Gale (for Vera Mladen), have asserted (during oral argument on other matters) alleged facts that, when considered in the light most favorable to the debtor, amount to an objection to the HH Plan grounded in § 1129(b)(1).

## A § 363 Sale and <u>In re: Lionel</u>

Before the court may approve a sale of the Real Property pursuant to 11 U.S.C. § 363 rather than through a chapter 11 plan with the substantive and procedural due process protections inherent in that process, the sale proponent must demonstrate that all costs of sale, as well as allowed administrative claims, secured claims and unsecured claims will be paid at least as much as they would be paid under a chapter 11 plan. Pursuant to the Second Circuit's seminal *Lionel* decision, "a debtor applying under § 363(b) carries the burden of demonstrating that a use, sale or lease out of the ordinary course of business will aid the debtor's reorganization, [while] an objectant . . . is required to produce some evidence respecting its objections." *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). A bankruptcy judge considering a sale under § 363 must consider "all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." *Id.*

More recently, the Second Circuit has articulated its "concern . . . that a quick, plenary sale of assets outside the ordinary course of business risked circumventing key features of the Chapter 11 process, which afford debt and equity holders the opportunity to vote on a proposed plan of reorganization after receiving meaningful information. . . . Pushed by a bullying [party in interest], a § 363(b) sale might evade such requirements as disclosure, solicitation, acceptance, and confirmation of a plan." *In re Chrysler LLC*, 576 F.3d 108, 114 (2d Cir. 2009), *cert. granted, judgment vacated as moot sub nom. Indiana State Police Pension Trust v. Chrysler LLC*, 558 U.S. 1087, 130 S. Ct. 1015, 175 L. Ed. 2d 614 (2009). In its recent decision in *Czyzewski v. Jevic Holding Corp.*, the

United States Supreme Court compared the structured dismissal it disapproved with "transactions that lower courts have refused to allow on the ground that they circumvent the Code's procedural safeguards" citing, among others, the *Lionel* decision. *Czyzewski v. Jevic Holding Corp.*, __ U.S. __, 137 S.Ct. 973, 986, 63 Bankr.Ct.Dec. 242 (2017).

In this case, among the salient factors the bankruptcy court must consider are the fact that HH's Plan proposes to pay all allowed claims but takes away equity's potential recovery, the proposed Offers One and Two, and the possibility that the proposed Offers may not close even if approved by the court. The court must also consider that the § 363 sale proponent must demonstrate that a sale will pay the costs and expenses of the sale, including the secured claims of HH, the cost of a realtor commission, a capital gains tax, and other administrative and pre-petition claims as summarized in the table below, at a minimum.

| **Debt, Cost or Expense** | **Amount** | **Source in Record** |
|---|---|---|
| Secured Claim: Hartford Holdings, LLC | $8,794,365.34 | Proofs of Claim 14-21 as amended |
| Secured Claim: Hartford Holdings, LLC – Attorneys Fees | $644,500.00 | ECF No. 930 |
| Administrative Claim: Capital Gains Tax (State and Federal) | $1,743,056.00 | ECF Nos. 934; 938 |
| Administrative Claim: Real estate taxes now due (City of Hartford) | $476,871.53 | See footnote.[16] |
| Real Estate Commission: (if property sold pursuant to realtor's work) | $337,200.00 | ECF No. 979 |

---

[16] The amount of the outstanding real estate taxes owed was obtained from the publically available records of the City of Hartford. https://www.mytaxbill.org/inet/bill/search.do The amount consists of the following amounts: as to 21 Evergreen Avenue for the grand list of 2015 - $34,202.32; as to 360 Laurel Street for the grand list of 2015 - $5,110.07; as to 115-141 South Marshall Street for the grand list of 2014 - $45,751.55; as to 115-141 South Marshall Street for the grand list of 2015 - $86,194.98; as to 243 Laurel Street for the grand list of 2015 - $28,961.52; as to 270 Laurel Street for the grand list of 2014 - $42,223.76; as to 270 Laurel Street for the grand list of 2015 - $100,560.81; as to 252 Laurel Street for the grand list of 2015 - $27,996.13; as to 160 Collins Street for the grand list of 2015 - $27,582.39; as to 156 Collins Street for the grand list of 2015 - $31,857.65; and as to 56 Webster Street for the grand list of 2015 - $20,686.79.

| | | |
|---|---|---|
| Administrative Claim: Debtor's Attorney | $263,440.00 | ECF No. 934 |
| Administrative Claim and Secured Claim: Water and Sewer Liens/Taxes advanced by HH | $130,728.40 | ECF 944, 1:01:20-30 |
| Unsecured Claims | $76,682.27 | Proofs of Claim Nos. 2-1; 13-1; 22-1; and ECF No. 86[17] |
| TOTAL: | $12,465,161.27 | |

Even if the court adopts the EE evidence of a $9,800,000 value submitted during the Confirmation Hearing and adds the $3,000,000 in cash from the fire insurance proceeds, the estimate of value does not provide the requisite certainty that all claims would be paid and a surplus would then be available for the the equity holder Vera Mladen. Among other considerations, the property at 270 Laurel Street sustained substantial fire damage after Mr. McDonald's testimony and that certainly would have impacted his estimate of $9,800,000. The court therefore concludes that the value of the property that would be transferred to HH under its Plan is not worth more than the sum of the items summarized in the table above.

## Next Steps

Because the court believes the most efficient and fair resolution under the circumstances here is to provide the debtor, EE, with the opportunity to satisfy the *Lionel* criteria and to sell the Real Property – if it can – to the highest bidder, the court will confirm HH's Second Modified Fifth Amended Chapter 11 Plan (the "Plan"), ECF No. 709, with a stay of the implementation of the confirmation order (which will enter separately) that will

---

[17] The claims of Vera Mladen and Dusan Mladen scheduled in ECF No. 86 (an amended Schedule F, list of unsecured creditors) were recharacterized as equity in Adversary Proceeding No. 15-2034; the claim of Goran Mladen was disallowed in Adversary Proceeding No. 15-2035.

automatically terminate not later than July 31, 2017.  During the interim period of time, the debtor EE will have an opportunity to sell its Real Property pursuant to 11 U.S.C. §§ 363(b) and (f).

If EE is unable to obtain an order authorizing a sale of the Real Property pursuant to 11 U.S.C. §§ 363(b) and 363(f) on or before July 14, 2017, or if an approved buyer(s) is unable to consummate a purchase on or before July 28, 2017, then the stay of the confirmation order will terminate.  To monitor the progress of any potential sale process, the court will hold hearings on July 14, 2017, and July 28, 2017, at 10:00 a.m.  If it is demonstrated that there is cause to terminate the stay of the confirmation order during either of those hearings, the court will immediately do so.

If only one of either the Offer One Property or the Offer Two Property is sold pursuant to a possible, future court order, then the court shall schedule a status conference to address whether all or any portion of the HH Plan should proceed to be implemented.

Other than the question of value of EE's Real Property, the court finds and concludes that HH's Plan satisfies the requirements of 11 U.S.C. §§ 1129(a) and (b) based on the record of the Confirmation Hearing and the record of the case since that time.  If the debtor is unable to sell the Real Property on or before July 28, 2017 – a date that is more than the 90 days requested by debtor's counsel during the hearing on April 5, 2017 – the record will support a conclusion that HH's Plan is not unfair or inequitable.

ACCORDINGLY, it is hereby

ORDERED, that the Second Modified Fifth Amended Plan, ECF No. 709, of Hartford Holdings, LLC shall be confirmed (and a separate order shall enter); and it is

further

ORDERED, that the confirmation order shall be stayed pursuant to the terms and conditions set forth in this Memorandum and Ruling, subject to further order of this court, or until July 31, 2017; and it is further

ORDERED, that a scheduling conference to address the 363 Motion and the debtor's objection to HH's claims shall be held on Monday, April 17, 2017, at 4:00 p.m. (unless otherwise ordered due to counsel's schedules, if necessary); and it is further

ORDERED, that further hearings consistent with this Memorandum and Ruling shall be held on July 14, 2017 at 10:00 a.m. and on July 28, 2017 at 10:00 a.m.

Dated on April 13, 2017, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut